# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-0312V
UNPUBLISHED

| | |
|---|---|
| FRANKLIN KUCZARSKI,<br><br>　　　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: January 5, 2023<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset; Influenza<br>(Flu); Shoulder Injury Related to<br>Vaccine Administration (SIRVA);<br>Table Claim Dismissal. |

*Leigh Finfer*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Andrew Henning*, U.S. Department of Justice, Washington, DC, for Respondent.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING TABLE CLAIM**[1]

On March 19, 2020, Franklin Kuczarski filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccination he received on December 15, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this unpublished Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find that Petitioner's Table SIRVA claim must be dismissed, because the evidentiary record does not support the conclusion that the onset of his pain occurred within 48 hours following administration of the flu vaccine. This leaves, however, a possibly-meritorious causation-in-fact claim to be adjudicated.

## I. Relevant Procedural History

This case was assigned to the SPU in April 2020. ECF No. 8. From May 2021 through November 2021, the parties attempted to settle the case informally, but reached an impasse. ECR No. 31. On January 24, 2022, Respondent filed his Rule 4(c) Report in which he argued that Petitioner has not provided preponderant evidence that his shoulder pain began within 48 hours of his flu vaccination. Rule 4(c) Report at 6. Rather, Respondent noted that Petitioner reported that his shoulder pain began one week after his vaccination in his most contemporaneous records. *Id.*

After a review of the records, I determined that a hearing to resolve the disputed issues would be unnecessary. *See* ECF No. 33. I then directed the parties to file briefs and any other evidence in support of their positions. *Id.* Petitioner filed a Brief in Support of a Fact Ruling on the Issue of Onset ("Br.") on July 11, 2022, to which Respondent filed a response ("Op.") on November 12, 2021. ECF No. 35, 36. This matter is now ripe for adjudication.

## II. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which

are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] ... did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### III. Findings of Fact

I have fully reviewed the evidence pertaining to the onset question, including all medical records, Respondent's Rule 4(c) Report, and the parties' briefs. I find the following facts most relevant:

- Petitioner's pre-vaccination record reveals no injuries, inflammation, or dysfunction in either shoulder or arm.

- Petitioner received a flu vaccine in his right shoulder at a Walgreens Pharmacy in Springfield, MA, on December 15, 2018. Ex.1 at 2. Petitioner described "normal, residual pain" after his vaccination, but explained that the "pain never subsided" and "continued for weeks." Ex. 11 at ¶4.

- On January 8, 2019 (24 days after his vaccination), Petitioner presented to urgent care with shoulder pain for two weeks. Ex. 3 at 2. The record notes that "3 weeks ago flu shot R arm. 2 weeks developed R shoulder pain "frozen" with painful ROM." *Id.* The record also noted that Petitioner reported working on a lawn mower "for an extended period of time" 3-4 weeks ago. *Id.* Petitioner was diagnosed with a right shoulder sprain, advised to take over-the-counter pain medications, and was referred to physical therapy. *Id*. at 3.

- Two days later, on January 10, 2019, Petitioner presented to physical therapy for a shoulder evaluation. Ex. 4 at 171. Petitioner reported that "about two weeks ago, [he] began to have tightness in [his] right shoulder and it felt like it was going to lock up." *Id.* He stated that he had returned to the gym, but felt pain during his exercise. *Id.* Finally, Petitioner stated that he "got the flu shot about *a week before* the pain began" and that he "was not sure if it might have caused pain." *Id.* (emphasis added). Petitioner was discharged from physical therapy on August 20, 2019, after 42 sessions, having "reached maximum benefit from therapy." *Id.* at 58.

- On April 30, 2019, Petitioner returned to urgent care to follow up on his right shoulder pain, as well as right hand weakness for the past 2-3 weeks. Ex. 5 at 14. The record notes onset four months previously and that Petitioner reported some relief from physical therapy. *Id.* Petitioner was diagnosed with cervical radiculopathy and paresthesias, prescribed medications, and instructed to continue physical therapy and follow up with his primary care physician. *Id.* at 15-16.

- On May 24, 2019, Petitioner presented to orthopedic physician assistant, Henry Casagrande, for evaluation of his right shoulder. Ex. 6 at 2. Petitioner reported that his had had shoulder symptoms for approximately five months which were "induced when he received a tetanus vaccination into the right deltoid." *Id.* PA Casagrande's impression was "post vaccination inducted adhesive capsulitis." *Id*. He administered a cortisone injection and recommended that Petitioner continue physical therapy. *Id*.

- Petitioner returned to PA Casagrande on August 23, 2019 to follow up on his right shoulder pain. Ex. 6 at 6. Petitioner reported "significant improvements with near resolution" of his symptoms. *Id.* Petitioner was advised to continue physical therapy with more aggressive strengthening. *Id.*

- Petitioner retuned to physical therapy on August 28, 2019. Ex. 4 at 20. He was discharged on October 3, 2019, after five additional sessions. *Id*. at 9.

While I acknowledge that the standard applied to resolving onset for an alleged Table SIRVA is liberal, and will often permit a determination in a petitioner's favor, especially in the *absence* of fairly contemporaneous and direct statements within the petitioner's medical records to the contrary, not every case can be so preponderantly established. Ultimately, the resolution of such fact issues involves weighing different items of evidence against the overall record.

Here, Petitioner's onset claims are offset against a record created very near-in-time to vaccination in which Petitioner reported the onset of his right shoulder pain as beginning approximately one week *after* his vaccination. Although Petitioner states that he had "normal, residual pain following administration" of his flu shot, there is no record or sworn statement from Petitioner or any other witness indicating that the pain occurred within 48 hours. And the two medical records closest in time to Petitioner's vaccination (the January 8, 2019 urgent care visit and the January 10, 2019 physical therapy evaluation) specifically contradict onset as having occurred within the required period. Rather, both of those records place onset approximately one week after vaccination. Ex. 3 at 2; Ex. 4 at 171. These records, both created within the first month after vaccination, consistently place onset of Petitioner's shoulder pain outside of the 48 hours required to establish a Table SIRVA.

Petitioner argues that "it is not a requirement that a petitioner specify the exact date of vaccination when reporting onset of pain to a provider or a third party, nor is it a

5

requirement that a petitioner accurately recall the month or day of their vaccination." Br. at 3. Petitioner further notes that "though Petitioner's medical records from January 8, 2019 state that his shoulder pain began 'two weeks ago,' we cannot assume that his pain began exactly on December 25, 2018." *Id.* But the records suggesting an onset of a week post-vaccination (and not sooner) remain. And there is no reference in any record, including Petitioner's affidavit, to an onset specifically occurring within the 48 period after vaccination. Thus, although he consistently linked his pain to his flu shot, Petitioner has not provided a credible explanation as to why he reported the onset of his pain as one week after his vaccination during the first two medical appointments to address his condition.

Accordingly, I find Petitioner has not preponderantly established that onset of his pain occurred within 48 hours of vaccination – meaning that he cannot proceed in this action with a Table SIRVA claim. But a causation-in-fact injury claim might still be tenable, based on an onset occurring a week after vaccination. I urge the parties to make one final brief attempt at settlement before transferring the case so that a non-Table version of the claim can be adjudicated.

## Conclusion

Petitioner's Table SIRVA claim is dismissed, for the reasons set forth above. **Petitioner shall file a joint status report addressing his conveyance of a revised settlement demand for an off-Table claim, and the parties' efforts towards informal resolution, by no later than <u>Tuesday, February 14, 2023</u>.** If the parties do not report progress in their efforts, the matter will likely be transferred out of the SPU.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master