# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-312V
Filed: November 17, 2023

|  |  |
|---|---|
| FRANKLIN KUCZARSKI,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Special Master Horner |

*Leigh Finfer, Muller Brazil, LLP, Dresher, PA, for petitioner.*
*Andrew Henning, U.S. Department of Justice, Washington, DC, for respondent.*

### DECISION[1]

On March 19, 2020, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10, *et seq.* (2012),[2] alleging that he suffered a right shoulder injury following an influenza ("flu") vaccination that he received on December 15, 2018.  (ECF No. 1.)  Petitioner alleged his injury was caused-in-fact by his vaccination.  (*Id*. at 3.)  For the reasons set forth below, I conclude that petitioner is *not* entitled to compensation and the petition is dismissed.

### I.     Applicable Statutory Scheme

Under the National Vaccine Injury Compensation Program, compensation awards are made to individuals who have suffered injuries after receiving vaccines.  In

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Within this decision, all citations to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10, *et seq.*

1

general, to gain an award, a petitioner must make a number of factual demonstrations, including showing that an individual received a vaccination covered by the statute; received it in the United States; suffered a serious, long-standing injury; and has received no previous award or settlement on account of the injury.  § 300aa-11(c).  Finally – and the key question in most cases under the Program – the petitioner must also establish a causal link between the vaccination and the injury.  In some cases, the petitioner may simply demonstrate the occurrence of what has been called a "Table Injury."  That is, it may be shown that the vaccine recipient suffered an injury of the type enumerated in the "Vaccine Injury Table," corresponding to the vaccination in question, within an applicable time period following the vaccination, which is also specified in the Table.  If so, the Table Injury is presumed to have been caused by the vaccination, and the petitioner is automatically entitled to compensation, unless it is affirmatively shown that the injury was caused by some factor other than the vaccination.  *See* § 300aa-13(a)(1); § 300 aa-11(c)(1)(C)(i); § 300aa-14(a).

As relevant here, the Vaccine Injury Table lists a SIRVA as a compensable injury if it occurs within 48 hours of vaccine administration.  *See* § 300aa-14(a), *amended by* 42 CFR § 100.3.  Table Injury cases are guided by statutory "Qualifications and aids in interpretation" ("QAIs"), which provide more detailed explanation of what should be considered when determining whether a petitioner has actually suffered an injury listed on the Vaccine Injury Table.  42 CFR § 100.3(c).  To be considered a "Table SIRVA," petitioner must show that her injury fits within the following definition:

> SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm.  These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.).  SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis . . . . A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
> 
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
> 
> (ii) Pain occurs within the specified time-frame;
> 
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
> 
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 CFR § 100.3(c)(10).

Alternatively, if no injury falling within the Table can be shown, the petitioner may still demonstrate entitlement to an award by showing that the vaccine recipient's injury or death was caused-in-fact by the vaccination in question.  § 300aa-13(a)(1)(A); § 300aa-11(c)(1)(C)(ii).  To so demonstrate, a petitioner must show that the vaccine was "not only [the] but-for cause of the injury but also a substantial factor in bringing about the injury."  *Moberly ex rel. Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (quoting *Shyface v. Sec'y of Health & Human Servs.*, 165 F.3d 1344, 1352–53 (Fed. Cir. 1999)); *Pafford v. Sec'y of Health & Human Servs.*, 451 F.3d 1352, 1355 (Fed. Cir. 2006).  In particular, a petitioner must show by preponderant evidence: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of proximate temporal relationship between vaccination and injury in order to prove causation-in-fact.  *Althen v. Sec'y of Health & Human Servs.,* 418 F.3d 1274, 1278 (Fed. Cir. 2005).

For both Table and Non–Table claims, Vaccine Program petitioners must establish their claim by a "preponderance of the evidence".  § 300aa-13(a).  That is, a petitioner must present evidence sufficient to show "that the existence of a fact is more probable than its nonexistence . . . ."  *Moberly*, 592 F.3d at 1322 n.2.  Proof of medical certainty is not required.  *Bunting v. Sec'y of Health & Human Servs.*, 931 F.2d 867, 873 (Fed. Cir. 1991).  However, a petitioner may not receive a Vaccine Program award based solely on her assertions; rather, the petition must be supported by either medical records or by the opinion of a competent physician.  § 300aa-13(a)(1).  Once a petitioner has established their *prima facie* case, the burden then shifts to respondent to prove, also by preponderant evidence, that the alleged injury was caused by a factor unrelated to vaccination.  *Althen,* 418 F.3d at 1278; § 300aa-13(a)(1)(B).

## II.  Procedural History

Petitioner's case was initially assigned to the Chief Special Master as part of the Special Processing Unit.  (ECF Nos. 8-9.)  As of May 21, 2021, respondent agreed to entertain settlement discussions (ECF No. 23); however, the parties were unable to reach agreement.  Accordingly, the Chief Special Master advised that the issue of onset of petitioner's shoulder condition was ripe for adjudication and required the parties to brief the issue.  (ECF No. 33.)  Subsequently, petitioner moved for a ruling on the written record seeking a finding that petitioner suffered onset of shoulder pain within 48 hours of vaccination.  (ECF No. 35.)  Petitioner's motion did not object to the Chief Special Master ruling as to onset and, in fact, requested that the Chief Master do so, arguing that the finding should be that onset occurred within 48 hours of vaccination, consistent with the timeframe required for a Table SIRVA.  (*Id*.)

On January 5, 2023, the Chief Special Master issued "Findings of Fact and Conclusions of Law Dismissing Table Claim."  (ECF No. 37; *see also* 2023 WL 1777208.)  The Chief Special Master concluded that there is not preponderant evidence that petitioner suffered onset of shoulder pain within 48 hours of his vaccination, thereby precluding the availability of any Table Injury claim.  (*Id.* at 6.)  In so concluding, the

Chief Special Master weighed more heavily the contemporaneous medical records that indicated onset was one-week post-vaccination.  (*Id*.)

Thereafter, the parties attempted settlement again, but reached an impasse.  (ECF No. 40.)  In light of the impasse, petitioner indicated that he "seeks an entitlement decision for an off-Table claim and awaits further instruction from the Court."  (ECF No. 40.)  Shortly thereafter, the case was reassigned to the undersigned.  (ECF No. 41-42.)  The case was reassigned to allow petitioner to pursue his cause-in-fact claim.  (ECF No. 41.)

On March 21, 2023, I held a status conference with the parties.  I advised the parties that "although the Chief Special Master's onset ruling is not binding on me, I am unlikely to disagree with the finding absent compelling new evidence.  If petitioner does not wish to pursue settlement, he will likely need to provide an expert opinion that provides more detailed evidence on timing beyond what is traditionally seen in SIRVA cases and/or provide additional evidence sufficient to prompt reevaluation of the Chief Special Master's prior finding as to onset."  (ECF No. 43, pp. 1-2.)  I expressed doubt that it will be possible for petitioner to substantiate that a one-week post-vaccination latency (as reflected in the medical records) is appropriate to support a cause-in-fact claim and instructed petitioner to file a status report indicating how he intends to proceed.  (*Id*. at 2.)

Initially, petitioner did indicate he would seek an expert report to support a cause-in-fact claim reflective of "timing beyond traditional SIRVA claims."  (ECF No. 44.)  However, on August 14, 2023, petitioner instead filed a supplemental affidavit.  (ECF No. 46; Ex. 10.)  Thereafter, on September 11, 2023, petitioner filed a status report in which he further advised that "[a]lthough Special Master Horner advised Petitioner of the likely need for an expert report to support any cause-in-fact claim, Petitioner is seeking reevaluation of the Chief Special Master's prior finding as to onset."  (ECF No. 47.)  Petitioner asserted that, "[a]n expert report in support of onset timing beyond 48 hours would be in direct contradiction to Petitioner's assertions in both his supplemental declaration (Exhibit 10) and several medical records."  (*Id.*)  Petitioner's status report did not indicate any intention of filing further evidence.

On September 6, 2023, I issued an Order to Show Cause why the case should not be dismissed.  (ECF No. 48.)  I explained the standard for revisiting prior rulings and explained that

> I have already advised petitioner that based on my review of the case I am unlikely to disagree with the Chief Special Master's fact finding absent a material change in the record evidence.  However, petitioner has not presented any significant or compelling new evidence nor pointed to supervening law.  Petitioner also fails to describe any way in which the prior finding was erroneous.  Instead, petitioner indicates without supporting explanation that he is seeking a reevaluation of the Chief Special Master's prior fact finding, despite having had a full and fair opportunity to litigate

4

> onset of his condition before the Chief Special Master and despite having offered only the barest of additional evidence.

(*Id*. at 4 (citation omitted).)

I concluded that "petitioner has failed to muster meaningful support for his suggestion that the Chief Special Master's dismissal of the Table claim should be revisited.  Yet, he has also failed up to this point to prosecute his remaining cause-in-fact claim."  (ECF No. 48, p. 5.)  I provided petitioner sixty days to file any additional evidence he wishes to have considered along with a written submission pursuant to Vaccine Rule 8(d).  (*Id*.)  I cautioned that "[w]hile the undersigned will consider any and all arguments presented in petitioner's written submission, petitioner should anticipate that additional evidence will likely be necessary to avoid dismissal."  (*Id*.)

On November 13, 2023, petitioner filed a response to my Order to Show Cause.  (ECF No. 49.)  Petitioner did not submit any additional evidence, and instead summarized the current record and asked the court again to find that his "pain began within forty-eight (48) hours of flu vaccination."  (*Id.* at 8.)

In light of the above, I have determined that the parties have had a full and fair opportunity to present their cases and that it is appropriate to resolve entitlement on the existing record.  *See* Vaccine Rule 8(d); Vaccine Rule 3(b)(2); *see also Kreizenbeck v. Sec'y of Health & Human Servs*., 945 F.3d 1362, 1366 (Fed. Cir. 2020) (noting that "special masters must determine that the record is comprehensive and fully developed before ruling on the record").  Accordingly, this matter is now ripe for resolution.

### III.  Factual History and Prior Analysis of Onset

The factual history at issue is set forth in the Chief Special Master's Finding of Fact.  (ECF No. 37; *see also* 2023 WL 1777208.)  It is not necessary to repeat that history in full for purposes of this decision and it is instead incorporated by reference.  In short, petitioner was vaccinated on December 15, 2018.  (Ex. 1, p. 2.)  Three weeks later he presented to an urgent care clinic with a complaint of two weeks of left shoulder pain.  (Ex. 3, p. 2.)  The record specifies that petitioner reported having had a flu vaccine "1 week prior" to onset.  (*Id.*)  Two days later petitioner presented for physical therapy.  (Ex. 4, p. 171.)  At that encounter he explained that "I got the flu shot about a week before the pain began so I am not sure if it might have caused pain." (*Id.*)  On May 24, 2019, petitioner presented to an orthopedist.  (Ex. 6, p. 2.)  He associated his pain to his vaccination and reported a five-month history of shoulder pain.  (*Id.*)  The orthopedist diagnosed "post vaccination induced adhesive capsulitis."  (*Id.*)  Later, at an unrelated medical appointment, petitioner reported to his primary care physician he was experiencing shoulder pain he believed was secondary to his flu shot.  (Ex. 2, p. 5.)

In addition to evaluating the medical records, the Chief Special Master took note of the fact that Petitioner's affidavit described "normal residual pain" after his vaccination that "never subsided" and "continued for weeks."  (ECF No. 37, p. 4 (quoting Ex. 11, ¶

5

4).)  However, the Chief Special Master explained that petitioner's first treatment record for that shoulder pain specified that petitioner reported that "3 weeks ago flu shot R arm. 2 weeks developed R shoulder pain 'frozen' with painful ROM."  (*Id.* (quoting Ex. 3, p. 2).)  Two days later, petitioner's physical therapy evaluation recorded that petitioner reported "about two weeks ago, [he] began to have tightness in [his] right shoulder and it felt like it was going to lock up."  (*Id.* (quoting Ex. 4, p. 171).)  The record further specifies that petitioner "got the flu shot about a week before the pain began" and that he "was not sure if it might have caused pain."  (*Id.*)

The Chief Special Master considered petitioner's affidavit as evidence suggesting onset occurred within 48 hours of vaccination, but found it outweighed by the medical records for two reasons.  (ECF No. 37, pp. 5-6.)  First, nothing in the record, including petitioner's affidavit, actually specified onset occurring within 48 hours of vaccination.  (ECF No. 37, p. 6.)  Second, petitioner's two most contemporaneous medical records contradict the idea of pain beginning around the time of vaccination by explicitly placing onset at one-week post-vaccination.  (*Id.* at 5.)  The Chief considered petitioner's arguments, but concluded that petitioner "has not provided a credible explanation as to why he reported the onset of his pain as one week after his vaccination during the first two medical appointments to address his condition."  (*Id.* at 6.)

Subsequently, on August 14, 2023, petitioner filed a supplemental affidavit.  (Ex. 10.)  Petitioner's supplemental affidavit specifies that the post-vaccination pain he experienced began "immediately following" receipt of the vaccination at issue.  (*Id.* at ¶ 3.)  He adds that "[a]fter one (1) week, I realized the pain was not going to subside."  (*Id.*)  Apart from this affidavit, the record of the case otherwise remains the same as when reviewed by the Chief Special Master when he dismissed petitioner's Table claim.

## IV. Petitioner's Show Cause Response

Although petitioner did not file any additional evidence in response to my show cause order, he did file a brief explaining why he believes his case should not be dismissed based on the existing record.  (ECF No. 49.)  Petitioner acknowledges that the Chief Special Master found onset of shoulder pain occurred beyond 48 hours post vaccination based in large part on the contemporaneous medical records placing onset one full week post-vaccination.  (*Id.* at 3.)  However, petitioner declines to pursue a cause-in-fact claim based on a one-week post-vaccination onset because that would be inconsistent with his sworn statements and some of his other medical records.  (*Id.*)  Instead, petitioner's show cause response urges reevaluation of the Chief Special Master's dismissal of his Table claim.  (*Id.*)

Petitioner argues in effect that his later filed supplemental affidavit confirms that the Chief Special Master misconstrued his first affidavit.  (ECF No. 49, p. 4.)  Petitioner argues that the purpose of affidavits under the Vaccine Rules is only to explain the substance of a witness's testimony relating to the elements of petitioner's claim.  (*Id.* at 4-5.)  It does not require petitioner to delineate his specific allegations, *i.e.* to explicitly

6

state onset occurred within 48 hours of vaccination.  (*Id*.)  Further to this, petitioner argues that the Chief Special Master over weighed the contemporaneous medical records.  (*Id.* at 5-6.)  Petitioner cites the Federal Circuit decision in *Kirby v. Secretary of Health & Human Services* for the proposition that "[a]lthough a patient has a 'strong motivation to be truthful' when speaking to his physician, that does not mean he will report every ailment he is experiencing, or that the physician will accurately record everything he observes."  (*Id.* at 5 (quoting 997 F.3d 1378, 1383 (Fed. Cir. 2021).)  Petitioner argues that he should not be burdened with differentiating normal residual post-vaccination pain from what would prove to be pain due to a shoulder injury.  (*Id*.)

Petitioner further argues that prior program experience indicates that petitioners need not be precise in reporting onset to their physicians and that patient reports of symptoms associated to vaccination should be understood in context.  (ECF No. 49 at 5-6.)  Regardless of the limitations of his understanding of the relationship between his vaccinations and symptoms, petitioner's records show that he consistently felt his vaccination was an important aspect of his history of shoulder pain.  (*Id*. at 6.)  Petitioner stresses that based on these repeated histories, his orthopedist diagnosed a post-vaccination induced adhesive capsulitis.  (*Id*. at 6-7 (citing Ex. 6, pp. 2, 6).)  Petitioner urges a "lenient" standard in assessing onset for SIRVA.  (*Id*. at 7-8.)

## V.     Discussion

### a. Table Injury

I have considered petitioner's arguments; however, I am not persuaded that petitioner has provided any basis for reopening the Chief Special Master's dismissal of his Table Injury claim.  Generally, special masters may change or revisit any ruling until judgment enters, even if the case has been transferred.  *See McGowan v. Sec'y of Health & Human Servs.,* 31 Fed. Cl. 734, 737–38 (1994).  In most cases, however, a judicial officer such as a special master departs from previously decided issues only in the event of "new evidence, supervening law, or a clearly erroneous decision."  *Id.* at 737; *see also Sullivan v. Sec'y of Health & Human Servs.,* No. 10–398V, 2015 WL 1404957, at *20, n.36 (Fed. Cl. Spec. Mstr. Feb. 13, 2015).

Petitioner had a full and fair opportunity to litigate his Table injury claim prior to issuance of the Chief Special Master's finding of fact and the record is substantially the same as it was when the Chief Special Master rendered his finding.  Only petitioner's supplemental affidavit has been added to the record; however, that supplemental affidavit provides basically no new evidence despite petitioner urging otherwise.  Petitioner's first affidavit indicated that he experienced residual post-vaccination pain that never subsided and eventually prompted him to seek medical attention.  (Ex. 8, ¶ 4.)  Petitioner's supplemental affidavit offers the same assertion, adding only by implication that the pain was not actually "normal" post-vaccination pain after all and more explicitly stating that onset was immediate.  (Ex. 10, ¶ 3.)  In fact, the affidavit explicitly confirms it is merely a restatement of the initial affidavit, prefacing the key point with "as I previously stated."  (*Id*.)

As with many cases reassigned from the SPU, this case was reassigned for the specific purpose of allowing petitioner an opportunity to prosecute any remaining cause-in-fact claim after his Table claim was dismissed.  As discussed in the procedural history above, as long as a case continues to be litigated there is always a possibility that further record development will necessitate revisiting a prior finding based on newly discovered evidence.  However, petitioners should not view reassignment of a case out of the SPU as a second bite at the apple regarding what has already been decided.  When examining the record as a whole, petitioner's argument that his supplemental affidavit warrants reevaluation of his Table claim is specious.  Indeed, petitioner himself characterizes his newly filed evidence as "miniscule." (ECF No. 49, p. 4.)

### b. Onset

In dismissing the Table claim, the Chief Special Master previously concluded that the onset of shoulder pain in this case was *outside* the requisite 48-hour period for a Table SIRVA.  Based on my review of the medical records, I further specifically conclude for purposes of assessing causation-in-fact that the evidence preponderates in favor of a finding that onset of petitioner's shoulder pain began one week post vaccination for many of the same reasons discussed by the Chief Special Master when he dismissed the Table claim.

It is true, as petitioner argues, that medical records can be incorrect, that many petitioners report difficulty in determining that the initial symptoms of SIRVA are not typical post-vaccination pain, and that petitioners cannot necessarily be expected to always report onset of their symptoms with precision.  In this case, however, petitioner specified to two different medical providers during the course of his treatment that his shoulder pain began one full week post-vaccination.  (Ex. 3, p. 2; Ex. 4, p. 171.) Especially because the same report was recorded by two different medical providers, this is very weighty evidence.  "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions.  With proper treatment hanging in the balance, accuracy has an extra premium.  These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Dep't of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Petitioner stresses these are not the only reports of symptoms contained in the records and that petitioners often associate their symptoms to vaccination by noting they occurred "following" or "after" vaccination.  In this particular case, petitioner stresses his report to another physician that his shoulder condition was "secondary to" his flu shot. (ECF No. 49, p. 6-7.)  However, such notations are not actually inconsistent with symptoms beginning one-week post-vaccination as indicated by those medical records that were specific as to onset.  Petitioner's physical therapy records explicitly confirm that petitioner was suspicious that shoulder pain beginning one-week post-vaccination might be related to his vaccination. (Ex. 4, p. 171.)  Moreover, those records that specify a one-week post-vaccination onset are more contemporaneous to

onset than the later orthopedic records petitioner otherwise cites. *See e.g.*, *R.K. v. Sec'y of Health & Human Servs.*, No. 03-632V, 2015 WL 10936124, at *76 (Fed. Cl. Spec. Mstr. Sept. 28, 2015) (holding that more remote histories of illness do not have sufficient indicia of reliability to be credited over conflicting contemporaneous medical records and earlier reported histories), *mot. rev. denied,* 125 Fed Cl. 57 (2016), *aff'd* 671 Fed.Appx. 792 (Fed. Cir. 2016); *see also e.g., Vergara v. Sec'y of Health & Human Servs.*, 08-882V, 2014 WL 2795491, *4 (Fed. Cl. Spec. Mstr May 15, 2014) ("Special Masters frequently accord more weight to contemporaneously-recorded medical symptoms than those *recorded in later medical histories*, affidavits, or trial testimony" (emphasis added).).

Finally, while cogent testimonial evidence can sometimes outweigh contemporaneous medical records, petitioner's affidavits are insufficient to outweigh the medical records in this case. Petitioner's affidavits are sparse with regard to any description of events that would support his specific recollection of onset. (Exs. 8, 10.) Moreover, petitioner offers no attempt to explain how two of his medical providers came to report a one-week post-vaccination onset despite his understanding of events as stated in the affidavits. (*Id*.) Contrary to what petitioner argues in his briefing, both affidavits clearly state that by the time petitioner sought medical care he had resolved any confusion regarding the nature of his symptoms and concluded that the pain he had experienced from the time of his vaccination was more than merely normal residual injection pain. (Ex. 8, ¶ 4; Ex. 10, ¶ 3.) Indeed, that is precisely why he sought medical care. While petitioner does challenge some notations in his medical records, he conspicuously does not dispute that he reported a one-week onset at both urgent care and physical therapy. (*Id*.)

### c. Causation-in-fact

With regard to causation in fact, petitioner cites the opinion of his orthopedist noting petitioner to have suffered vaccine induced adhesive capsulitis. (ECF No. 49, pp. 6-7 (citing Ex. 6, pp. 2, 6).) However, the basis for the orthopedist's opinion is not indicated. The Federal Circuit has explained that "[a]lthough probative, neither a mere showing of a proximate temporal relationship between vaccination and injury, nor a simplistic elimination of other potential causes of the injury suffices, without more, to meet the burden of showing actual causation." *Althen*, 418 F.3d at 1278 (citing *Grant v. Sec'y of Health & Human Servs.*, 956 F.2d 1144, 1149 (Fed. Cir. 1992)). Thus, "[a] treating physician's recognition of a temporal relationship does not advance the analysis of causation." *Isaac v. Sec'y of Health and Human Servs.*, No. 08-601V, 2012 WL 3609993, at *26 (Fed. Cl. Spec. Mstr. July 30, 2012). Accordingly, an expert report would be critical to a cause-in-fact claim in this case, because the orthopedist's opinion is inadequate without more to address the showings required under the three *Althen* prongs.

Moreover, the history petitioner provided his orthopedist over five months post-vaccination was less detailed than the earlier history he provided at urgent care and physical therapy. (Ex. 3, p. 2; Ex. 4, p. 171.) Accordingly, it is not clear whether the

orthopedic opinion reflects the one-week post-vaccination onset that I have determined is preponderantly evidenced on this record. This greatly reduces the weight due this medical opinion as to causation. *See, e.g. Garner v. Sec'y of Health & Human Servs.*, No. 15-63V, 2017 WL 1713184, at *11 (Fed. Cl. Spec. Mstr. Mar. 24, 2017) (explaining that "the opinions or diagnoses of treating physicians are only as trustworthy as the reasonableness of their suppositions or bases. The views of treating physicians should also be weighed against other, contrary evidence also present in the record—including conflicting opinions among such individuals."), *mot. rev. denied,* 133 Fed. Cl. 140 (2017); *Anderson v. Sec'y of Health & Human Servs.*, No. 20-195V, 2023 WL 2237320, at *13 (Fed. Cl. Spec. Mstr. Feb. 2, 2023) (finding that an orthopedist's vaccine causation opinion was entitled to less weight where earlier records contradicted petitioner's report to the physician that the vaccine at issue and been administered in the affected shoulder).

Prior experience also suggests that a one-week post-vaccination onset is not compatible with the type of medical theory underlying SIRVA. *Pitts v. Sec'y of Health & Human Servs.,* No. 18-1512V, 2023 WL 2770943 (Fed. Cl. Spec. Mstr. Apr. 4, 2023); *Gruszka v. Sec'y of Health & Human Servs.,* No. 18-1736V, 2023 WL 2583390 (Fed. Cl. Spec. Mstr. Feb. 24, 2023). Petitioner acknowledges this point. (ECF No. 49, p. 3.) Accordingly, a more detailed explanation substantiating that a one-week onset is appropriate to infer causation would be critical in order for petitioner to meet his burden of proof under *Althen* prongs two and especially three. Petitioner was provided an opportunity to provide an expert opinion substantiating that a one-week onset is appropriate for a SIRVA-like injury, but declined to do so. Petitioner suggests that it would be disingenuous to pursue a cause-in-fact claim based on a one-week onset, because this would be inconsistent with his sworn statements. (*Id.*) This is not so. Petitioner need not agree that onset was one-week post-vaccination in order to substantiate that it would be medically reasonable to infer causation based on such a latency.

## VI. Conclusion

After weighing the evidence of record within the context of this program, and for all the reasons discussed herein, petitioner has neither demonstrated that his right shoulder injury constitutes a Table Injury of SIRVA nor an injury caused-in-fact by his vaccination. Accordingly, this case is dismissed.[3]

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

---

[3] In the absence of a timely-filed motion for review of this Decision, the Clerk of the Court shall enter judgment accordingly.